We're happy to hear argument in our second case, number 144533, United States v. Gardner. Mike Dowling May it please the court, my name is Mike Dowling, I represent the appellant Ezekiel Gardner. Mr. Gardner asked this court to vacate his conviction for being a felon in possession of a firearm. Alternatively, he asked the court to reverse the decision of the district court to impose a 262-month sentence pursuant to the now-voided residual clause of the Armed Career Criminal Act. I begin my argument with the Armed Career Criminal Act issue. The district court erred by sentencing Mr. Gardner pursuant to the residual clause of the Act based on his prior convictions for the crime of North Carolina common law robbery. In Johnson v. United States decided last June, the Supreme Court struck this residual clause down as unconstitutionally vague. As a result of Johnson, the only way the crime of North Carolina common law robbery can constitute a violent felony under the Armed Career Criminal Act is if it satisfies the definition under the force clause. In another Johnson decision decided in 2010, which I will colloquially refer to as Johnson 2010, the Supreme Court specified that the meaning of physical force within the force clause is force capable of causing physical pain or injury to another person. It specifically used the words strong and substantial in describing this particular force. In other words, in Johnson 2010, the Supreme Court set a substantial floor as to the amount of force needed in order for a predicate state conviction to constitute a violent felony under the force clause. And by doing so, the Supreme Court substantially narrowed the number of and the types of predicate convictions that could possibly satisfy the force clause. And in the wake of Johnson 2010, offenses that can be committed through the application of some lesser force, either de minimis or moderate force, but not strong or substantial force, those offenses now fail to satisfy the force clause. That was the holding of this court in the United States v. Aparicio Soria. Common law robbery is just such an offense. It can be committed through the application of de minimis or moderate force, and it can also be committed through the application of fear, something that is slight fear and does not have anything to do with the application of force at all. In State v. Sawyer, a North Carolina Supreme Court case, the court stated that with respect to the force type of robbery, the degree of force is, quote, immaterial so long as it is sufficient to compel the victim to part with his property. So Sawyer establishes that strong violent force, substantial force of the Johnson 2010 variety, is not an element of the North Carolina crime of common law robbery. Is fear of force sufficient? Your Honor, fear is a different means of proving the crime. Fear of force may be sufficient in a particular case. However, the way that the Sawyer case describes the fear, it uses in that opinion the term slight. And so I would contend that if the – I think that's the opinion the court has a little bit for everybody. It does, Your Honor. We do have an argument as to the meaning of State v. Sawyer, and I would contend that State v. Sawyer necessarily decides this case in Mr. Gartner's favor. On the fear element, the quote is, or by what other circumstances the taking may be accomplished, if the transaction is attended with such circumstances of terror, such threatening by word or gesture as in common experience, are likely to create an apprehension of danger and induce a man to part with his property for the sake of his person, the victim is put in fear. And so I would contend that construing this particular statute, first, the fear can be slight. They use the term slight. And second, the fear need not have anything to do with the application of force at all. And under United States v. Torres-Miguel, this court has held that merely placing a victim in fear of bodily injury, even if it's substantial fear of bodily injury, that does not logically mean that the application or threatened application of force has occurred. That was a force clause case, too? That was a force clause case. How would you be in fear of bodily harm without some sort of force? There are a number of examples I've cited in my brief. There are, as a hypothetical, I would consider this, Your Honor. Suppose a convenience store clerk, it seems a lot of these cases arise in convenience stores, is working one evening, a liquor store clerk even, and there's a refrigerated area where beer or wine or whatever is stored. It's a locked area, like a closed-in space. A diminutive person appears at the door and says, Mr. Clerk, give me the keys to the register, give me the keys to the safe, or I'm locking you in here all night. Now, if I'm the clerk, I have fear that I'm about to be locked in the freezer and perhaps suffer hypothermia, severe bodily injury. But there's never been a threatened application of physical, strong, substantial bodily force in that context. I am confident that the North Carolina Supreme Court – Force of aspiratation of kidnapping? That would meet most states. That's not aspiratation. If you lock beer in the freezer, that's kidnapping. I think in my hypothetical, I'm assuming that the person is already in the freezer. Oh, I thought they were on the counter. They're stocking cases of beer. They're doing something. They're working in the store by themselves. They're running the register, and they're having to restock the cooler. I'm going to shut you in? I'm going to lock you in? I'm going to shut you in? I'm going to lock you in this cold cooler if you don't give me the keys to the safe. I'm standing at the door. I don't have a gun. I don't have a menacing look. You don't think that's a threat to bodily injury, being in a freezer? It is fear of bodily injury, but it's not threatened application. I think you need to change your hypothetical a little bit to locking you in the storeroom. Absolutely. There's no freezer. There's no injury. Absolutely. I guess there isn't any, but I still am not so sure that fear of bodily injury isn't enough. I think you even told me that you thought that that was enough. In certain circumstances, if I am actually threatening injury, not just fear. Well, if the fear of the bodily injury is a result of the threatened application of force, that would constitute Johnson 2010 force. However, the way that fear of injury, the fear element, has been described by the North Carolina Supreme Court, it does not have anything. It's not tethered to the application of force, and that's what you need in order to trigger the force clause. So what North Carolina case, I mean, as I say, I think that this North Carolina Supreme Court case, which we, of course, would defer to, I think it has enough language in it to be not clear on this point. So then you look to other North Carolina cases. Certainly. And, again, I think it's clear that there are two means to committing a robbery, and essentially there's a taking by violence or fear. And the cases construing the violence prong that are illustrative of how de minimis violence can be used is our state versus chance. That was a 2008 North Carolina Court of Appeals case. And in that case, similarly, a convenience store clerk was working one evening. The defendant came in, did not threaten any harm, didn't have a gun. He asked her for some cigarettes. She went behind the counter and got the cigarettes. When she re-approached the counter, the defendant grabbed the box with one hand, and he pushed the clerk's hand off with the other and ran out the store. The North Carolina Court of Appeals upheld the common law robbery conviction under the theory that that was sufficient force. Similarly, in State versus Eldridge, that's another contemporary case from the Court of Appeals. A defendant had gotten into an electronics store, went back into the back of the store room. The clerk saw him back there, asked him to leave. He was very polite. He refused to leave. Eventually he pushed the clerk on the shoulder. And the clerk fell back, and that gave the defendant an opportunity to grab a television that was in the store room and run out the store. Again, those examples I would contend. Chance is an example of them. This is really your best case. It's my best case. It's de minimis force. I would contend State versus Eldridge is moderate force. Either way, neither one of them rise to the level of Johnson 2010, strong, substantial force. And it has to be elementally. And the way that the North Carolina Supreme Court has construed this element, it simply cannot be said that categorically in every case of North Carolina common law robbery, we can be confident, this court can be confident, that the application of strong physical force has occurred or the threatened application of strong physical force has occurred. And we've discussed the government's... Is there any concept about a case that's one-off? I mean, if you find a single state case. I think, obviously, this has become sort of a chess match between the lawyers to see how extreme the hypotheticals are. I don't believe that necessarily these court of appeals decisions are binding on this court and its interpretations. I do think that the Johnson 2010 decision says you have to defer to the North Carolina Supreme Court. And if you do that, we have State v. Sawyer. And the language couldn't be clearer from State v. Sawyer that both force can be slight. I'm sorry. The degree of force is immaterial and the degree of fear can be slight. So I do agree that some of the court of appeals opinions can become confusing and contradictory. I would not allow that contradiction and noise in the law to override the North Carolina Supreme Court's clear declaration that the minimus force and slight bodily fear are sufficient for purposes of a North Carolina common law robbery. Because of this, we contend that the residual clause is unconstitutional. The sentence that Judge Fox explicitly imposed pursuant to the residual clause cannot be enforced. It should be reversed. The government cannot prove that categorically North Carolina common law robbery involves the application of strong, substantial force. We ask that you reverse the district court's imposition of the Armed Career Criminal Act sentencing enhancement. I would turn then to the suppression issues. Unless the court is not inclined to hear those, I'd be happy to address them. It's your time. Thank you, Your Honor. The district court erred in refusing to suppress the gun and ammunition that was recovered from Mr. Gardner's vehicle on January 11, 2013. It also erred in refusing to suppress his statements to officers at the roadside. Essentially what happened was there was a confidential informant who called the Farmville Police Department. They notified the police officer that Mr. Gardner was a convicted felon, that he possessed a firearm, that he had a white Lincoln on Thorn Street. Three officers respond to the scene. When they first respond to the scene, there's no one in the white Lincoln. They run the Lincoln's tag number and determine it comes back to Ezekiel Gardner. Eventually, Mr. Gardner gets in the vehicle, drives down the street to do a three-point turn so he can exit the area, and the officers effect a stop at that point. Mr. Gardner is cooperative throughout the stop. Officers ask him out of the vehicle. They ask him if he has any weapons on them. He denies that he does. They pat him down for weapons, and they find none. It's my contention, Your Honor, that the government is obligated to use the least intrusive means under a Terry stop, and it did so, and it had exhausted those means at the point in which the officer asked Mr. Gardner if he had a gun, and Mr. Gardner responded in a negative, and he frisked Mr. Gardner under Terry, and he didn't find a gun. But wasn't there a little bit more factually in this case, because the officer said that Mr. Gardner appeared to be either reaching for or putting something under the seat of the car? I think that there's... And then that he appeared nervous at the time he was interacting with the officer and he kept looking at the floor of the car? Certainly. There is the contention from the government that Mr. Gardner's shoulder dipped when they turned on the blue lights. At the suppression hearing, Mr. Gardner, I believe, testified that his driver's license he kept in his visor. When the blue lights came on, his explanation was that he opened the visor, his license fell down. But we don't really care about the reason, do we? No, but I believe... Whether there's subjectively reasonable suspicion, aren't we? Absolutely, that's the standard. But, however, in considering all of those circumstances, the officers aren't entitled to rely on ambiguous facts that are susceptible to interpretation. Well, what about that when you have a proven informant who's done business with the police and never misled them? The informant? He then says, this guy's driving a white Lincoln, he's in possession of a firearm, he's a convicted felon. Certainly, and I think that does add to the government's contention that they had reasonable suspicion. However, it's viewed in totality, and the informant in this case gave a bare-bones tip without any description of Mr. Gardner. The officers did not do any probing at all in order to determine how the informant knew of this, and under Illinois v. Wardlow, one of the factors that's critical in arriving at a conclusion of reasonable suspicion is basis of knowledge. The officers essentially took the informant at her word and went to the location and effected this traffic stop. But you don't challenge the traffic stop, do you? I'm pardon? You don't challenge the traffic stop? I do challenge the traffic stop, Your Honor. Well, he violated the law, traffic law. We respectfully disagree with that interpretation, Your Honor. Was he at a cul-de-sac? He was not at a cul-de-sac. If he got at a cul-de-sac, you can't make three-point turns at a four-point cross-section like that. I know you tell me you go this way, you go that way, and you want to go back the way you came from. That's a violation of the law. Not necessarily, Your Honor. What do you mean, not necessarily? The statute says that it's a violation if... to finish his three-point turn. So you got that, I know what you're going to say, if it had an effect on other drivers. The police officer said it did because he was the driver. He was the only one. That's all he needs is one. He just needs one. Okay. But it's a nice try. It's a good try. You can't really... I know you're doing the best for your client, you're doing a good job, but you really can't contest the traffic stop, really. Your Honor, we would persist in our argument. I don't want to persist, but let's assume that you were passed that. You're saying that they saw a verdict, but they believe that your client has corroborated because he did drop something. He did exactly what they saw him do for a different reason, but he did, right? So he goes, do you have an unwarranted delay in terms of that order? He's entitled to a citation, the right one, correct? Absolutely. Do you have a delay claim that he's... They kept him too long. Kept him too long? The way we structured our claim is that it did ripen into an arrest by virtue of the fact that once they'd exhausted their investigative means, they should have let him go on his way. So in some respects, yes, that's the second... Had they written a ticket? They did not ever write a ticket. But there wasn't enough time in spite of the ticket normally could have been written. How many minutes are we talking? Well, they immediately get him out of the car, so that right there... That helps them because it's immediate, right? Took him back, and what else? Safety, want to make sure he didn't have a weapon, they patted him down. All right, and what's next? Right, go ahead, keep going. They patted him down, they removed him to the rear of the car, and they expand the scope of the questioning. And we contend that at that point he was in custody, that it exceeded the reasonable basis for the initial stop, and there was a Fourth Amendment and a Fifth Amendment violation. But Perry wouldn't prohibit some preliminary questions like, well, do you have weapons, do you have drugs? Now, most of the cases they ask, that comes followed with drugs, guns, whatever. Go ahead. May I answer, Your Honor? Sure. It absolutely does not prohibit those questions. However, Florida v. Royer and a number of Supreme Court cases clearly indicate that law enforcement is supposed to use the least intrusive means, and they had done that when they asked him the preliminary question, do you have a gun? And they did a Terry frisk, and they found no evidence of a crime. But then right after that, what happened? They removed him to the rear of the vehicle. And then what happened right after that? They asked him again. It wasn't easy. He said, I have a gun. Right. There's no delay. I understand, Your Honor. We ask that you reverse the conviction and reverse the armed criminal act sentencing. Thank you very much. Mr. Rubin? Good morning. May it please the Court, Phil Rubin on behalf of the United States. I'd like to start with common law robbery, just as my colleague did. North Carolina common law robbery is categorically violent, both in its active force version and its constructive force version. And we know that because the North Carolina Supreme Court has said so. In looking at its own aggravating factor for death penalty cases, which asks whether a prior felony involved the use or threat of violence to the person, the North Carolina Supreme Court said it did and said, and I'm quoting, the use or threatened use of violence is an element of common law robbery. That's the North Carolina Supreme Court. Of course, their own enhancement for violence is not binding on this Court. Have they said, though, that the degree of force is immaterial? So long as it is sufficient and sufficient to compel the victim to part with his property. And that's the sufficiency requirement. It's a bit of a strange wording because they say it's immaterial, and then they immediately say, but it has to be sufficient. And the cases bear that out. For example, a mere purse snatch, which is undoubtedly a simple battery. If you grab a purse off someone's shoulder, the North Carolina Court of Appeals has said that's not enough. It was neither active nor constructive force because he didn't threaten anyone and he didn't use enough force. And the North Carolina Supreme Court has also said, and this goes back 150 years and was quoted in the same Sawyer case that my colleague raised, the force must be of such a nature to show that it was intended to overpower the party robbed or prevent his victim. In practice, though, the North Carolina Supreme Court hasn't been reviewing these cases from their Court of Appeals that are really allowing just de minimis force, aren't they? I mean, particularly the Chance case kind of stands up as an example, and so does Eldridge. Chance, particularly, where they just pushed the hand out of the way and the Supreme Court didn't take it upon itself to correct that. I mean, it seems that North Carolina has made the determination, the court, that common law robbery is going to be interpreted expansively, whether for deterrent purposes or whatever else. And what about the fact that they've had plenty of time to correct Chance and Eldridge in other cases of the Court of Appeals, and they never have. They never said you need more force than that, than just pushing a hand. A few responses to that, Your Honor. And the first is I don't know that we can take much from the North Carolina Supreme Court's not acting on prior cases, just as we can't take much from the Supreme Court denying cert in a particular case. It doesn't mean the court is okay with or approves of it. Right, but they're not a cert court, are they? I'm actually, I must confess, I'm not sure that they are. I think they're an error-correcting court, but I'm not positive on that. But what I would rely even more on is these aren't even published cases of the intermediate court. Yeah, but what does that mean? I hear you. Well, I'm reluctant to rely on unpublished cases always, although everything is published these days, we know. But I take the point. But, you know, the things where we have reported opinions are the tip of the iceberg. I mean, there are all kinds of convictions. Nobody ever appeals, right? So what do we do with these cases? I do think, first of all, the fact that they're not even binding on the North Carolina Court of Appeals, I think that is meaningful to the extent you mentioned earlier a one-off situation. But I would like to delve into the facts of these, because I also think that they don't quite stand for the idea of de minima force. In fact, I don't think they stand for that at all. The first one, I'll talk about Eldridge. And in Eldridge, someone was attempting to steal a TV from a back storeroom, and the clerk got in their way, and the person wanted them to move, and then pushed them, causing them to fall over onto store shelves. You didn't say that causing her. The defendant then pushed Ms. Farmer on the shoulder, and she fell backwards. It doesn't mean that the push caused her to, does it? It could be. I think I do take that. Maybe yes, maybe no. I think I do take it from that, Your Honor. But I don't think there's any other reason in there that suggests she fell for some other reason. Frightened? Scared to death? If that were the case. So it would all be originating from the push. So you're saying that that would be... It's a significant, I mean, we're talking in Johnson, and I would like to go to this Johnson 2010 definition. And there's two words that are key. So the line is, capable of causing physical pain or injury to another person. Two things. First, it need only be capable of causing pain or injury. And second, it need only be capable of causing pain. So it doesn't mean it has to cause injury. It doesn't mean it has to be the kind of force that you would know for sure. You don't have to shoot someone to use force under Johnson. All we know from Johnson is that a simple battery, a common law, offensive touching, isn't that. That's not enough. But this idea that we have to parse this very, very narrowly, I think is very risky because at that point I'm not sure whether there would be very many or any crimes left under the armed court criminal act. Oh, there would be a lot. Oh, lots and lots. In terms of robberies. And I can... Many of them, the facts of the robberies would absolutely fall under them. But if we sit down and say, is it possible that you could commit this with force, it's more than de minimis, but maybe in this case it didn't cause pain. I think then if you parse that out for every crime, I think you could have a real problem. And so... Well, what worries me so much conceptually about this is that if we're really threading the needle, I mean, the sentence, the enhancement is so enormous in terms of the armed career criminal act. Should these borderline cases make it through? Obviously, most of the cases should, other than the borderline cases, because they were intended by Congress to be covered by it. But when these kind of little bit shaky borderline cases, are they really the ones intended for the giant penalty that accompanies this? I would respond to that almost by looking at it another way and saying, are these cases, the borderline cases, the ones that should define categorically, what North Carolina has said is an offense that involves the use or threatened use of violence, and that's the North Carolina Supreme Court, regardless of what its intermediate court has said. And that was recent. That was, I believe, 1994. That was newer than some of these other cases. But even looking at the facts of chance, and it's really important with these cases to look at the procedural posture. It's not just that it was unpublished. It's that it was a review of a motion to dismiss, and what the court said. First it said this was the defendant grabbed a carton of cigarettes, and the testimony was that he pushed her hand off of it in order to take it away. What the court said was that if it looked at the evidence in the light most favorable to the government, giving it every reasonable inference therefrom, it could support the conviction. Now, we know that's actually a very- But they were reviewing the judgment, so they had to, didn't they? That's right. But all it ultimately means, this is something a jury would decide in those cases, and the jury does have to decide that it's sufficient force. All they said was giving all the inferences. And what we don't have in chance, it's a very short opinion, what we don't have in chance is the actual testimony that that jury saw. We don't have the witnesses, and I can absolutely imagine a scenario where people are struggling over an item and the push is hard enough to be forced. And we don't know, and the truth is the posture in that case doesn't support applying that as a categorical holding that you can commit common law robbery without the kind of force that the North Carolina Supreme Court has said is required. I mean, this is substantial force. A mere purse snatching is not enough. Okay. And you keep saying the North Carolina Supreme Court has said it's required. Are you talking about Sawyer? I'm talking about Sawyer, Your Honor, and John and Jones and Bell. Sawyer, of course, we've talked about. John is the older case quoted in Sawyer that says that this has to be forced to show it was intended to overpower the party robbed or prevent his resisting and not merely to get possession of the property. That's also important because if we look at the force as too minimal, we risk folding this into larceny from the person, which is very similar except it doesn't require the violence or fear. And so if we start to say, well, you don't really have to use force, well, now I don't know the difference between a common law robbery and a larceny from the person. And North Carolina has kept that delineation. Other cases have even said that a common law robbery, by definition, involves an assault because it is a crime against the person. And so I think if two unpublished cases, which I think on the facts, don't support my colleague's argument, I recognize that that is definitely, these are the best cases to look at for sure. But if those two unpublished intermediate court cases cause all North Carolina common law robberies, not to count as violent felonies, when you have the North Carolina Supreme Court saying this involves an element of violence to the person, I think that doesn't balance the courts in North Carolina and the North Carolina Supreme Court should be the one that prevails on this. This is a violent offense. And the facts behind, having read many of these cases now, the facts behind these cases are very violent. If we look at the constructive force version of this, we talked a little bit, I think my colleague was quoting from Sawyer, which is also quoting from an older case, Norris, no matter how slight the cause creating the fear, and he focused on the cause creating the fear being slight, but it goes on to say, if the transaction is attended with such circumstances of terror, such threatening by word or gesture as in common experience are likely to create an apprehension of danger, that is not minimal. And I think that language on the constructive force form of common law robbery is very much decisive. All they're saying at the beginning of that sentence is that you might cause it in a very minimal way. And we know anyone who's worked on bank robbery cases knows you can cause a lot of terror with a piece of paper. That's a very slight cause, but nonetheless, if you put a piece of paper under and you say, the money or your life, or even just say the money or else, that teller is going to be attended with such circumstances of terror that a reasonable person, and this is an objective test as well, because they make clear that this has to be in common experience, something that would create an apprehension of danger, that makes someone part with their property for the sake of their person. I mean, that is a pretty strong statement. I really think that that captures the whole of this offense, and that's exactly the kind of thing. It's Tennessee common law robbery, so it's slightly different cases, but their offense is very, very similar. The Sixth Circuit looked at things like that in the Mitchell decision and held that common law robbery qualified categorically under the force laws. I would like to address my colleague's point about the Torres-Miguel decision and the idea that you could commit forceless injury. This is something he raised for the first time in his reply brief. We raised a couple of cases in a 28-J letter, but I would like to address that in more detail. It's centered on the idea that you could do something like, for example, this is what Torres-Miguel uses as an example of poisonsome. You would be causing physical injury, but you wouldn't be using force. That was in 2012. Here's what the United States Supreme Court said in Castleman in 2014. Castleman provided the exact same example as a forceless injury. The use of force in Castleman's example is not the act of sprinkling the poison. It is the act of employing poison knowingly as a device to cause physical harm. The Supreme Court has said indirect use is a force. They go on to say that the harm occurs indirectly rather than directly, as with a kick or punch does not matter. They even went on to say that there's a risk if you don't allow indirect harms because, for example, shooting a gun can be an indirect harm. All I do is pull a trigger. The gun shoots a bullet, and this was the Supreme Court's example. They said, but of course, we wouldn't think for an instant that that's not using force. Pushing someone in front of a car, the push might be slight, but if I'm using the car as a weapon, then I am indirectly using the force of the car, and this goes to all of these things. If I lock someone in a storeroom and let them starve to death or lock them in a freezer and let them freeze to death, I'm employing that room knowingly as a device to cause physical harm, and the Supreme Court has said that is force. Now, my colleague responded that Castleman was about misdemeanor crime and domestic violence, and that is a lesser quantity of force, but what it means to use force is not different. Using force is always the same concept. How much is required is different for misdemeanor crime and domestic violence versus final felony. And so I would say that if this Court is looking at that argument that was raised about Torres-Miguel, I would say that Castleman has abrogated that holding from Torres-Miguel about forceless injury, and so therefore a causing bodily injury to someone would be using force against them. The second response to that is something that came up from the Court. We don't have any cases on this, and you would think this is a crime that's been around for a couple hundred years. We don't have any cases to show someone threatening to poison someone in order to commit a common-law robbery or threatening to lock them in a storeroom or something like that, and you would think if that was a way you could commit the crime in North Carolina, we'd see some case. I'm sure, I have no doubt my colleague would have found it and would have provided that. I haven't found it either. And so this Court and the Supreme Court have noted that we're not supposed to use our legal imagination to come up with some hypothetical that wouldn't qualify as a crime of violence, and that's exactly what that argument is asking the Court to do. It's asking for legal imagination. And so those two are independent reasons to reject it, and there is a third, and that is if you could commit a North Carolina common-law robbery that way, and if Torres-Miguel is still good law, those crimes are extortion, the generic offense of extortion which is enumerated in the Armed Car Criminal Act as a violent felony, which would mean that any way of committing common-law robbery would either fall under the force clause or it would fall under the enumerated offense of extortion, but you would know categorically that it was a violent felony. And I think my colleague's response was that a camp decision precludes that. But it doesn't. The camp was about divisibility, and this is not a divisibility argument. We're saying that categorically there's no way to commit the crime without it being either a use or a threatened use of force or the generic definition of extortion. Extortion is surprisingly broad as a crime. The Supreme Court called it obtaining something of value from another with his consent induced by the wrongful use of fear, force, or threats. You're saying we can just look to any crime that's listed and kind of piggyback that onto the crime of robbery? Aren't you going outside the ambit of what we're supposed to be considering, and that is what is common-law robbery? I think I am talking about what is common-law robbery, Your Honor. I'm saying that if you could accept these hypotheticals and if you can cause forceless injury and that doesn't count. But it doesn't matter that he wasn't charged with extortion. That's right. This court in the Supreme Court said it doesn't matter what the name of the offense is. What matters is do the elements line up to the generic offense. But you're relying partially on robbery. Sure. And you're just trying to shore it up with extortion. And can you do that? I mean, or do you have to just look at one crime and say it's this? The Ninth Circuit has done this, Your Honor. And they've done this a couple of times, including after the camp. They've recognized it. In that case, it was a guidelines case. This was California robbery, which is broader than North Carolina's. And they said it fits under the enumerated offense of robbery in the guidelines because it has the commentary with additional enumerated offenses. And they said there's this other form of it that doesn't fit within the general definition of robbery, but those are all extortion. And so we know anyone who has committed that crime must have committed one of these enumerated offenses, and therefore it's a crime of violence. What the categorical approach is asking is when somebody has been convicted of, say, common-law robbery, are we sure that their conduct has met the definition in the Armed Career Criminal Act? And what I'm arguing is even if you accept this Torres-Miguel argument, you can be sure that the conduct has met the definition in the Armed Career Criminal Act because there's no way to commit it that isn't the use or threatened use of force or meets the generic definition of extortion. And both of those count. So we don't need to know which one in a particular case because we know no matter what it's a violent felony. And so those three reasons that Torres-Miguel's abrogated that you can't actually cause forceless injury in the enumerated offense of extortion independently respond to that argument, all three of them. Any one of those is enough. In returning just very briefly to the constructive force version of this crime, we talked about a couple of cases, and I'd like to talk about one more that my colleague focused on, which is the Hammons decision. And this is one where the victim testified that she wasn't about to refuse the man the money when he came into the store and suffer the consequences. And the argument is he didn't really threaten her. He came around the counter. Anyone who's worked retail in a store knows if somebody comes around behind the counter into that protected space, you're already in fear at that point. Is that the case where he had assaulted the store clerk previously? That's Henry, Your Honor. Oh, Henry. And I think that one, the facts are just incredibly clear. Hammons, though, I actually also think that the facts in Hammons are clear because what the victim testified, he comes around the counter already having worked retail, that's scary to me. He gets in her face, and she testifies that, I knew he was serious about it because he was standing in my face staring at me as if I'd done something wrong. And then he said, okay, open the register. Read that text, it doesn't sound so bad. She testified that the way he said it, she knew he was serious. So you've got somebody who comes around behind the counter, demands that you open the register, and is standing in your face staring at you, a threat can be implied. That's all that that really stands for, and that's not a new concept. Bank robbery threats, returning to bank robbery, are very frequently implied. And so I think the constructive force form, and if those are the best two cases, I don't think they support the idea that a constructive force, common law robbery doesn't involve force. I think it does, it involves the threatened use of force. The last thing I would touch on is divisibility. And this is something the court would only need to reach, we don't think the court will need to reach it, because we think both forms of common law robbery are categorically violent. But it's interesting that both sides today have talked about this almost as two different crimes. Actual force common law robbery, constructive force common law robbery. If you think that one of those doesn't count, then I think that shows how divisible this offense is. It has two finite versions that are defined very differently in the case law. And that if one of those forms doesn't count, we think they both count, but if one doesn't count, we should be able to look at the Shepard documents to see if they show us which one. Now, a lot has happened since the briefing in this case. The Supreme Court has granted cert in a case called Mathis, and so I won't spend any time on this argument. I would just ask if the court's going to reach divisibility, that I would recommend it may be worth waiting to see what the Supreme Court says. Well, Mathis is a burglary case, right? I believe it is. But it talks about this divisibility. It makes the same kind of divisibility. But it's a statutory case. It's statutory burglary, isn't that correct? That's right. Iowa Code Section 713? I'm not sure that's right. And that's why I'm wondering whether it would be a helpful guide, because we're talking about a common law crime and the definition of a common law crime. This is a statutory offense. I'm just not sure it's going to provide useful guidance. I'm sure it's possible. In deciding this issue. It's possible. But it's just a different breed of crime, isn't it? I think it's actually not that different, Your Honor. And the reason is this court said in Hemingway that a common law offense is treated the same way for divisibility purposes as a statutory one. You just have to get the elements. Which we did, to be sure. But the statutes are just easier to tell. It's certainly easier. But I think what the Supreme Court is really going to get into is the heart of this circuit split, which is how deep do you look into state law jury anonymity at the initial stage of the question, is it divisible? And I see my time has expired. Can I briefly conclude? Very briefly. I will be very brief, Your Honor. Three circuits, 6th, 8th, 10th, are looking at this where they just look at the face of the statute. This court and the Ninth Circuit are looking a little deeper in it. And that's the source of the split. And I think the Supreme Court will tell us which one of those or maybe some other option that nobody has been doing yet. It may be the new decamp, and therefore it may be useful. But, again, we urge the court not to reach divisibility because we think any version of this offense, actual force or constructive, is categorically violent. And as for the suppression argument, I think our arguments are stated in our brief and we would rely on those. Thank you very much.  Gellin, do you have rebuttal? Thank you, Your Honors. As to the Bell case, this is, I think it's a canard. The Bell case uses the term violence. It doesn't use the term force. And violence is referring back to the definition in Sawyers. It's a reference back to it has nothing to do in the Bell case with the application of force. It's the same term of art that's used in the definition of common law robbery. And to understand what violence is, we look to State v. Sawyers. And violence is when force is used, the amount is immaterial. The Tennessee case, United States v. Mitchell, interpreted Tennessee State common law robbery as a violent felony. That is a categorically different State crime. There, while it was defined as a taking by violence or fear, the Tennessee Supreme Court in State v. Fitz interpreted the term violence to mean, quote, so as to injure, damage, or abuse. That fits squarely within the definition of Johnson 2010 force. It expressly says it's physical force and it must be intended to injure, damage, or abuse. That's categorically a different case than State v. Sawyer. State v. Sawyer says the force used is immaterial. I think Mitchell is of no help to this Court in sorting out whether North Carolina common law robbery is categorically a violent felony. It's tethered because although the force might be slight, it still has to be sufficient to make a person have fear of bodily injury. So, for example, what might be necessary for a 100-year-old lady walking down the street to be slight, like, give me my money, I'll take your cane. That might be enough. But if the person is a 250-pound 20-year-old, so that's why you can't give this. But the question, either one, in either case, it has to be enough that's sufficient that would put the person in some fear of bodily harm. So wouldn't that be true? Would you agree that if you said, give me the money, and you just raised your fist like this, that give me your money, is that enough? Absolutely. Is that slight? No, is that slight? It depends on the surrounding circumstances. It's not Judge Gregory, it's me. Your Honor, under all circumstances, I would be terrified in that case. Yeah, you better be terrified of Judge Mark. If I could just briefly address the sufficiency point, because I do believe it's been misconstrued, sufficiency has nothing to do with the modicum of force. And in order to understand this, you have to understand that a common law robbery requires some level of force, whether it's de minimis or moderate or even substantial force. And when the court uses the term sufficiency, it's that force, whether it's de minimis or moderate, that must cause the victim to part with their property. Contrast that with a larceny from the person, a pickpocketing case. There may be strong, substantial force in a pickpocketing case, but because these crimes are so sudden, it's not the force that causes the person to part with their property. That's the distinction. If you drill down into State v. John, the 18th- That's the force of a pickpocketing case. You're not a good pickpocket. It happens from time to time, and I think that this is what explains the distinction. And in State v. John, in a sentence right after the one that was quoted, the court actually even said that there are some larceny from the person cases that involve substantial force, but because they're so sudden, they don't cause the victim to give up his property. And so there's no distinction as to the level of force as between larceny from the person and common law robbery. The question is whether, if it's de minimis or moderate force, did it cause the person to give up their property? And that's what the court means by sufficiency. I think it's been misconstrued in the cases, and I would ask that-I'm sorry, I'm way over my time. I will stop now. Thank you very much. Thank you, Your Honor. Mr. Dowling, we understand that you're court-appointed, and we very much appreciate your efforts for your clients. You've done a fine job. We will come down and greet the lawyers and then go directly to our next case.
judges: Diana Gribbon Motz, Roger L. Gregory, Barbara Milano Keenan